**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JOHNNIE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.    06 CV 5086 |
| | ) | |
| JOLIET JUNIOR COLLEGE, et al | ) | The Honorable Judge Wayne R. Andersen |
| | ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT ITS 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

**INTRODUCTION**

This action arises out of Plaintiff's allegations that Defendants, Joliet Junior College

(hereinafter "JJC") and Professor Edward Senu-Oke, discriminated against her on the basis of her

race, national origin and in retaliation for her exercise of protected rights. Plaintiff Johnnie

Johnson filed a First Amended Complaint at Law on November 17, 2006, alleging discrimination

on the basis of race, national origin, and retaliation in violation of Title VII, as amended by the

Civil Rights Act of 1991, 42 U.S.C. § 1981, and various state law tort claims against Defendants.

Plaintiff's claims for defamation per se, negligent supervision and retention, and

intentional infliction of emotional distress are preempted by the Illinois Human Rights Act,

rendering this Honorable Court without subject matter jurisdiction. Additionally, Plaintiff's

claim for negligent supervision and retention and her various claims for punitive damages are

barred by the Illinois Tort Immunity Act. Plaintiff's defamation claim is also subject to dismissal

because she has failed to plead the statement itself, as required under federal law. Finally,

Plaintiff's claims under 42 U.S.C. § 1981 should be dismissed because Plaintiff has not pleaded

the necessary policy or custom as required to state a claim against a public entity such as JJC.

## STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of any claim for which

the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). This requirement cannot be

waived. *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606 n.1 (7th Cir. 2003).

In contrast, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the legal sufficiency of the complaint. FED.R.CIV. PRO.12(b)(6). Such a motion is

proper if the plaintiff is unable to prove any set of facts supporting the claim that would entitle

her to relief. *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921,

925-926 (7th Cir. 2003). All well-pled factual allegations in the complaint are taken as true, and

a court is to draw all reasonable inferences in favor of the nonmoving party. *Id.* at 926.

## ARGUMENT

I.    COUNTS VI - VIII SHOULD BE DISMISSED BECAUSE § 8-111(C) OF THE
      ILLINOIS HUMAN RIGHTS ACT PREEMPTS PLAINTIFF'S STATE LAW TORT
      CLAIMS, AND AS A RESULT, THE DISTRICT COURT LACKS SUBJECT
      MATTER JURISDICTION

Under Illinois law, the Illinois Human Rights Act (hereinafter "IHRA") bars

discrimination based upon a plaintiff's race or national origin, and preempts state law tort claims

when the factual basis for the tort claims constitute a civil rights violation under the act. 775

ILCS 5/1-102(A), *see also Krocka v. Reigler*, 958 F. Supp. 1333, 1346 (N.D. Ill. 1997). Section

8-111(C) of the IHRA states, "[e]xcept as otherwise provided by law, no court of this state shall

have jurisdiction over the subject of an alleged civil rights violation other than as set forth in

[the] Act." 775 ILCS 5/8-111(C). This section vests the Illinois Human Rights Commission

(hereinafter "Commission") with exclusive jurisdiction over all alleged civil rights violations that

are within the purview of the IHRA. *Weatherly v. Illinois Human Rights Commission*, 338 Ill.App.3d 433 (1st Dist. 2003). As a result, plaintiffs may not seek redress in the courts for state law tort claims when their allegations constitute civil rights violations under the IHRA because Section 8-111(C) grants exclusive subject matter jurisdiction to the Commission. *See Williams v. Wal-Mart Stores, Inc.*, No. 99 C 7672, 2001 WL 185111, *2 (N.D. Ill. Feb. 22, 2001), *see also Westphal v. City of Chicago*, 8 F. Supp. 2d 809, 812 (N.D. Ill. 1998)("The Illinois Supreme Court has stated that if a state common law claim is 'inextricably linked' to the allegation of discrimination, it is within the purview of the IHRA and must be brought in front of the IHRC").

In determining whether a plaintiff's state law tort claim is merely a disguised civil rights violation that is preempted by section 8-111(C), a court must look at whether the tort claim is "inextricably linked" to a civil rights violation. *Williams*, 2001 WL 185111, at *2. A tort claim is "inextricably linked" to a civil rights violation when the claim cannot stand independent from the duties imposed by the IHRA. *Id.* As such, in order for Plaintiff to bypass the Commission with her state law tort claims she must allege facts which, when standing alone, not only support each element of her alleged tort, but also remain independent from facts that support allegations of discrimination. *Krocka*, 958 F. Supp. at 1346, *see also Williams*, 2001 WL 185111, at *3 (*citing Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517 (1997)). In short, the factual basis for plaintiff's state law tort claims cannot be grounded in a discriminatory act that the IHRA protects against. *Westphal*, 8 F. Supp. 2d at 812.

In the instant case, Johnson's state law tort claims are clearly based and dependent upon her allegations of discrimination. As a result, these tort claims rely upon civil rights law and must be brought before the Commission. *Id. See also, Coleman v. JJC*, Case No. 06 C 2135,

3

slip op., pages 4-5 (N.D.Ill., Dec. 4, 2006). Specifically, Count VI of Johnson's Complaint

alleges negligent supervision and retention on the part of Defendant, JJC. (See First Am.

Compl., Count VI.) In asserting this tort claim Johnson alleges that JJC was duty bound to

ensure her working conditions were free from racial harassment and discrimination. (First Am.

Compl. ¶ 59.) Additionally, Johnson alleges that JJC negligently supervised and retained

employees who violated the duties required of them under federal law, state law, and the school's

policies and procedures. (First Am. Compl. ¶ 60, 61.) The Complaint does not allege that the

duties imposed by JJC's own policies and procedures are distinct from those imparted by federal

and state law and the explicit language of the IHRA imparts upon JJC the legal duty not to

discriminate on the basis of race or national origin. 775 ILCS 5/1-102(A), 2-102 (A). As such,

by her own allegations, Johnson "inextricably links" her state law tort claim of negligent

supervision and retention with her claims of discrimination, for in pleading her tort claim

Johnson alleges that JJC was duty bound "to ensure Plaintiff's working conditions were free

from an environment patterned with racial harassment and discrimination." (First Am. Compl. ¶

59.); *Smith v. Chicago School Reform Bd. Of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999);

*Coleman, supra*, page 5. Therefore, dismissal is appropriate because Johnson's allegation of

negligent supervision and retention cannot stand independent from the factual underpinnings of

her discrimination claim.

This situation is similar to the case of *Geise v. Phoenix Co. Of Chicago, Inc.*, 639 N.E.2d

1273 (1994), in which a female employee added the state law tort claims of negligent hiring and

retention to the sexual harassment suit she brought against her manager. *Id.* at 1274. The Illinois

Supreme Court held that state law tort claims must be dismissed and construed as charging a

4

defendant with a civil rights violation under the IHRA when the facts which give rise to the tort cannot be filtered from a civil rights violation. *Id.* at 1278. The Court reasoned, "[a]bsent the allegations of sexual harassment, [plaintiff] would have no independent basis for imposing liability on her former employer under the facts present here. [The tort claims] depend on the prohibitions against sexual harassment for their viability." *Id.* at 1277. Under this rationale, the Court noted the mere labeling of an allegation as an independent tort claim does not alter its "fundamental nature" when allegations give rise to civil rights violations under the IHRA. *Id.* Likewise, in the instant case, absent Johnson's allegations of discrimination her state law tort claims cannot stand, for they provide no independent basis upon which to impose liability on JJC. Therefore, since Count VI of Johnson's Complaint contains tort claims which are "inextricably linked" to IHRA civil rights violations these claims "must be construed as charging [JJC] with a 'civil rights violation' within the meaning of [the] IHRA," and must be dismissed as preempted by section 8-111(C) of the act. *See Id.* at 1278; *Coleman, supra,* page 5.

Similarly, Count VII alleges that Defendant Seno-Oke defamed Johnson by making untrue and offensive statements "involving Plaintiff's inability to perform or want of integrity in the discharge of her duties and a lack of ability in her trade or business." (First Am. Compl. ¶ 68.) Given that "Plaintiff repeats and reasserts the [discriminatory] allegations of paragraphs 1-66" (First Am. Compl. ¶ 67), she "inextricably links" her claim of defamation to her claims of discrimination (Id., ¶¶ 12, 13, 20, 29, 32, 44, 46, 49, and 59.) *See Geise v. Phoenix Co. Of Chicago, Inc.,* 639 N.E.2d at 1278. As a result, only the Commission can hear the claim and Count VII should be dismissed as against Defendant Senu-Oke. *See Coleman, supra,* page 4.

Finally, Count VIII alleges intentional infliction of emotional distress (hereinafter "IIED")

against both Defendants. As the basis for this claim, Johnson alleges that the Defendants'

conduct, "as described above," satisfies the "extreme and outrageous" requirements of the tort.

(First Am. Compl. ¶ 79.) By pleading in this manner Johnson, again, relies upon discriminatory

acts to satisfy the elements of her alleged tort. (First Am. Compl. ¶ 59, 79.) Simply stated,

Johnson alleges her emotional distress arose from defendants' racial and national origin

discrimination (First Am. Compl. ¶ 59, 79) and she fails to provide this Court with independent

facts which would allow her claim of IIED to stand alone. As such, since the distressing

incidents Johnson relies upon fail to independently satisfy the elements of IIED absent the

allegations of discrimination, only the Commission can hear the state law claim rather than the

Court. 775 ILCS 5/8-111(C), *see also Westphal*, 8 F. Supp. 2d at 812, *see also Smith*, 165 F.3d

at 1151. As a result, the IIED claim is preempted by Section 8-111(C) of the IHRA, and Count

VIII should be dismissed as against both Defendants. *See Coleman, supra*, page 5.

II.    THE ILLINOIS TORT IMMUNITY ACT BARS COUNT VI'S NEGLIGENT
       SUPERVISION AND RETENTION CLAIM, AS WELL AS THE REQUESTS FOR
       PUNITIVE AND EXEMPLARY DAMAGES AGAINST JJC CONTAINED IN
       COUNTS I-VI AND VIII

Count VI of Johnson's Complaint makes a claim of negligent supervision and retention

against JJC. (See First Am. Compl. Count VI.) Joliet Junior College is an entity protected under

the Tort Immunity Act. *See Olojo v. Kennedy-King College*, Case No. 05 C 6234, slip op., 2006

WL 1648441 at *7 n. 14 (N.D.Ill. 2006); *Luciano v. Waubonsee Community College,* 245

Ill.App.3d 1077, 1084, 614 N.E.2d 904, 908-09 (Ill. App.Ct. 1993). As a result, JJC cannot be

held liable for this claim because the Illinois Tort Immunity Act (hereinafter "the Act") expressly limits liability to conduct that is willful, wanton, or malicious. 745 ILCS 10/2-202.

Importantly, another court in this district has already applied § 2-202 to a public entity such as JJC, and held that "[b]y their very nature, [Plaintiff's] claims of *negligent* supervision and *negligent* retention do not allege conduct that is willful, wanton, or malicious." *Murray v. Lichter*, No. 95-C-1921, 1995 WL 631794, *12 (N.D. Ill. Oct. 24, 1995). In short, *negligent* supervision and *negligent* retention are precluded by the Illinois Tort Immunity Act. *Id.* As such, Johnson's claim against JJC for negligent supervision and retention should be dismissed with prejudice.

Furthermore, Counts I-VI and VIII of Johnson's Complaint seek punitive and exemplary damages. (First Am. Compl. ¶ 27, 36, 41, 51, 57, 66, 82.) The Act, pursuant to section 2-102, bars such damages against local public entities such as JJC. 745 ILCS 10/2-102. Specifically, the Act states, "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." *Id.*

In applying this section of the Act courts in this district have consistently stricken plaintiffs' requests for punitive and exemplary damages, finding under Title VII, § 1981, and under state law claims that punitive and exemplary damages are not recoverable against public entities such as JJC. *Murray*, 1995 WL 631794, at *12, *see Herrera v. Hite-Carter*, No.03 C 50251, 2003 WL 22867759, *2, (N.D.Ill. Dec. 2, 2003). As a result, JJC respectfully requests that this Honorable Court strike Plaintiff's requests for punitive and exemplary damages in Counts I-VI and VIII against JJC.

7

III.  COUNTS IV AND V FAIL TO SUFFICIENTLY ALLEGE THE NECESSARY
      "POLICY OR CUSTOM" REQUIRED TO STATE A CLAIM AGAINST A PUBLIC
      ENTITY UNDER § 1981

      Counts IV and V of Plaintiff's Complaint allege violations of § 1981 by JJC, a public

entity. (See First Am. Compl., Count IV, V.) In *Embry-Hampton v. Chicago Public Schools*,

2006 WL 1156103 (N.D. Ill. 2006), the court recently held that, "in order to prevail on a § 1981

claim...against a public entity, a plaintiff must show that the constitutional violation was the

result of a [sic] 'an official policy or custom.' " *Id.* at *3. *See also Small v. Chao*, 398 F.3d 894,

898 (7th Cir. 2005). In so holding, the *Embry-Hampton* court recognized the distinction between

§ 1981 claims against public and private entities, and explained that a plaintiff must plead that a

"policy or custom" caused her injuries when bringing suit against a municipal corporation or

public entity. *Id., see also Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913

(7th Cir. 1999), *see also Moore v. City of Chicago*, 126 Fed.Appx. 745, 747 (7th Cir. 2005).

      When suing a private entity, a plaintiff sufficiently pleads a § 1981 claim when she

alleges (1) she is a members of a racial minority, (2) the defendant had an intent to discriminate

on the basis of race, and (3) the discrimination concerned one or more of the activities

enumerated under the statute. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). By

contrast, when a plaintiff seeks to recover from a public entity under § 1981 she must allege, in

addition to the aforementioned elements, that the public entity possessed an official "policy or

custom" that caused the violation. *Looper Maint. Serv. Inc.*, 197 F.3d at 913, *see also Moore*,

126 Fed.Appx. at 747. Indeed, the Seventh Circuit Court of Appeals has expressly directed that

plaintiffs who allege § 1981 violations against public entities must demonstrate that such

violations arose from an official "policy or custom" within the meaning of *Monell* and its

8

progeny. *Looper Maint. Serv. Inc.*, 197 F.3d at 913. When a plaintiff fails to allege an official "policy or custom," plaintiff fails to state a claim, and the court should dismiss the count. *See Id.*, at 914.

*Monell v. Dep't of Social Services of N.Y.*, 436 U.S. 658 (1978), provides the framework for analyzing what constitutes a "policy or custom," and in doing so clearly distinguishes "policy or custom" from the individual occurrences Johnson alleges. In *Monell*, the Court held the defendant, Department of Social Services of the City of New York, was liable under § 1983 because it forced pregnant employees to take unpaid leaves of absence before such absences were medically necessary. *Id.* at 694. This overarching and indiscriminate command constituted a "policy or custom." *Id.*

By comparison, Counts IV and V of Johnson's Complaint allege she was subjected to: racial and national origin slurs and comments; being watched and monitored without cause; threats and other acts of intimidation; differential treatment; and removal, reassignment and denial of new classes by JJC. (First Am. Compl. ¶ 13 (a)-(e).) These allegations, made by Johnson, do not rise to the level of an official "policy or custom" as required under § 1981. *Looper Maint. Serv. Inc.*, 197 F.3d at 913. In fact, JJC's alleged conduct is distinguishable from the official "policy or custom" outlined in *Monell*, because Plaintiff merely describes conduct that she herself allegedly suffered, and does not allege any official "policy or custom" that caused her injury. (First Am. Compl. ¶ 13 (a)-(e).) Such random, individual, and unrelated acts by JJC do not rise to the level of the official "policy or custom" that Johnson must allege in order to satisfy § 1981's requirements against a public entity. *Looper Maint. Serv. Inc.*, 197 F.3d at 913, *see also Moore*, 126 Fed.Appx. at 747.

9

Johnson fails to plead the necessary "policy or custom" to state a claim against a public entity under § 1981. As a result, Counts IV and V of Johnson's Complaint should be dismissed. *Id.*

IV.  COUNT VII OF PLAINTIFF'S COMPLAINT FAILS TO PROPERLY PLEAD A DEFAMATION CLAIM AGAINST DEFENDANT EDWARD SENU-OKE, BECAUSE PLAINTIFF FAILS TO ALLEGE THE DEFAMATORY STATEMENT

Count VII of Plaintiff's Complaint alleges that Defendant Senu-Oke made untrue and offensive statements regarding Johnson which constitute defamation *per se*. (First Am. Compl. ¶ 68, 69.) Under Illinois law a defendant is liable for defamation *per se* when he publishes statements about the plaintiff which impute an inability to perform or want of integrity in the discharge of plaintiff's duties of office or employment; or impute a lack of ability in the plaintiff's trade, profession or business. *Bryson v. News America Publications, Inc.,* 174 Ill.2d 77, 88 (1996), *see also Babb v. Minder,* 806 F.2d 749, 757 (7th Cir. 1986).

Generally, the Federal Rules of Civil Procedure only require that plaintiff set forth a short and plain statement which provides the defendant with notice of the allegations against it, however, when a plaintiff alleges defamation *per se* the Federal Rules require that plaintiff set forth the exact defamatory statement(s). Fed. R. Civ. Pro. 8(a); *Levitt v. S.C. Food Service, Inc.,* 820 F.Supp. 366, 367 (N.D. Ill. 1993), *see Murray v. Lichter,* No. 95-C1921, 1995 WL 631794, at *13 (N.D.Ill. Oct. 24, 1995). The rationale underlying this exception flows from the realization that the statement is needed for a defendant to properly respond to the allegation. *Levitt,* 820 F.Supp. at 367. Moreover, courts within this district have expressly stated, "[t]his is especially true when a plaintiff alleges defamation *per se*, as apposed to defamation *per quod*." *Id.*

In Count VII Johnson alleges that Defendant Senu-Oke, an employee of JJC, defamed her by making statements regarding "[her] inability to perform or want of integrity in the discharge of her duties and a lack of ability in her trade or business." (First Am. Compl. ¶ 68.) In addition, Johnson alleges these statements are "defamatory per se." (First Am. Compl. ¶ 69) However, Johnson fails to plead any specific statement as required under the Federal Rules. *Levitt*, 820 F.Supp. at 367, *see Murray*, No. 95-C1921, 1995 WL 631794, at *13. As a result, Count VII of Plaintiff's complaint should be dismissed.

## CONCLUSION

Wherefore, Defendants, JJC and Senu-Oke, respectfully request that this Honorable Court dismiss the following with prejudice: Counts VI, VII, and VIII because these Counts are state law tort claims preempted by the IHRA. Alternatively, Defendants seek dismissal of Count VI because it is barred by the Illinois Tort Immunity Act and Count VII because Plaintiff fails to sufficiently plead the defamatory statement as required under the Federal Rules. Counts IV and V are also subject to dismissal as against Defendant JJC because Plaintiff fails to plead a "policy or custom" caused her injuries as required when suing a public entity under § 1981. Finally, Defendants request that this Honorable Court strike Plaintiff's requests for punitive and exemplary damages contained in Counts I-VI and VIII pursuant to the Illinois Tort Immunity Act.

s/Sara M. Cliffe

SARA M. CLIFFE, Attorney No. 06273803
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)
scliffe@jsotoslaw.com
*One of the Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, December 22, 2006, I electronically filed the foregoing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, which will sent notification to the following CM/ECF participants: Kimberly A. Carr, Allie MacInnis Burnett, Joseph E. Urani and Lori A. Vanderlaan;

s/Sara M. Cliffe
SARA M. CLIFFE, Attorney No. 06273803
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)
scliffe@jsotoslaw.com
*One of the Attorneys for Defendants*

12